## 15194

### STATE v. ROOF

(12 S. E. (2d), 705)

*Mr. Norbert A. Theodore* for appellant,

*Mr. A. F. Spigner, Solicitor,* for respondent.

January 2, 1941.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

The defendant was convicted upon a bill of indictment charging him with the larceny of an automobile, the property of Edward Hartley, on Wednesday, the 30th day of August, 1939. From this judgment the defendant appeals, assigning error.

It is first contended that proof of the corpus *delicti* had not been established, and that the Court erred in refusing to direct a verdict on this ground.

There was evidence tending to show that Edward Hartley, the owner of the automobile, who lived at Batesburg, accompanied by J. D. Crouch, drove to Smith's Stock Yard, in the city of Columbia, on August 30, 1939, to attend a stock sale. He parked the car there and left it for a while. But because it had been left in a spot somewhat isolated, and

fearing that certain articles therein might be stolen—including a leather coat and a little dog belonging to Mr. Crouch —he returned to the car and moved it nearer to the place where the sale was being held. When he approached the automobile for this purpose he saw the defendant, whom he did not then know, walk close to the automobile, peek through the windows, and then pass on. Shortly thereafter, when Hartley went back to the place to which he had moved the car it was no longer there. He immediately notified the State Highway Department and the police officers of the city of Columbia.

Four days later the officers with a search warrant, according to the evidence of the state, found the automobile— a 1931 Ford Coach—in a garage of the defendant on his farm about fifteen miles from Batesburg. The wheels and tires had been removed from the automobile, and were found beneath the floor of the garage, and they had been replaced by others of a different kind. The leather coat belonging to Mr. Crouch was likewise discovered underneath the garage. The little dog could not be found, but chicken bones and other remnants of food were in a pan in the garage, from which it could be inferred that some animal had been fed there. Certain tools left in the automobile, belonging to Hartley and upon which he had punched his initials, were also found in the defendant's garage, and indentified. A short distance below the house of the defendant, on a blind road, were found the distinctive tracks made by tires originally on the stolen automobile; and at a spot where the car had apparently been parked was found a grease rag, recognized by the prosecuting witness as his. Empty boxes which had contained old spark plugs were also found and identified. The tracks referred to led from the woods toward the defendant's house.

When the case was tried, Mr. Hartley, who saw the defendant shortly after he had been arrested, identified him as the same person he had seen loitering around and looking

into his automobile at Smith's Stock Yard. Another witness, a negro, likewise testified that he saw him there, and that the defendant had requested him to move the Hartley car to another location, farther removed from the Stock Yard.

The accused testified, and gave this explanation of the way in which he became possessed of the car. He said that two strangers visited his place, one driving a Buick, and one driving the car in question, and offered to sell both cars to him. After some negotiations he purchased the 1931 Ford coach for $60.00. Not having the entire amount at the time, he paid $10.00 in cash, and it was agreed that the parties would return the next morning and he would then pay them the balance of $50.00. The defendant was not given, nor did he request, a bill of sale, or a registration card transferring the title of the automobile to him, although it was shown that the accused was a licensed dealer in automobiles, experienced in their purchase and sale, and that he sold more than thirty cars a year.

The defendant denied removing the wheels from the automobile, and denied all knowledge of the articles found under his garage. He likewise denied changing the motor number of the engine, and otherwise disfiguring the car, as to which there was evidence. He said that the two strangers did not return the next morning to receive the balance of the purchase money; that he had never seen them before the time he claims to have bought the automobile from them, and had never seen them since. This latter testimony is reminiscent of what the Court said in *Thomason v. State*, Tex. Cr. App., 41 S. W., 638: "This is the same ubiquitous stranger who so often figures in the records of this Court in theft of cattle cases. Like the Wandering Jew, he is always on the go, but, when the time of trial comes, is always inaccessible, and cannot be found."

The *corpus delicti* in larceny is constituted of two elements—that the property was lost by the owner, and that it was lost by a felonious taking. It is, of

course, necessary that the *corpus delicti* should be established, as it is clearly not permissible that anyone should be adjudged guilty until it is shown that a larceny has been committed. The record is replete with evidence tending to show the commission of the crime by the defendant—not only that the property was lost by the owner, but that it was lost by a felonious taking by the defendant. The *corpus delicti*, like any other fact, may be established by circumstantial evidence, and it is clear that the evidence adduced in this case made a jury question.

The appellant suggests that ownership was not sufficiently proved because the state did not introduce in evidence the license plate or the license number issued by the State Highway Department to Mr. Hartley. While the introduction of such evidence would have tended to prove ownership in Hartley, this method of proof is not exclusive. The evidence otherwise of ownership by Hartley was overwhelming, and undisputed.

It is charged that the trial Judge violated the Constitution, Art. V, Section 26, by expressing an opinion or commenting upon the evidence in his instructions to the jury. Our attention is directed in support of this contention, to the following expressions used by the trial Judge in the course of his charge: "Now, that's about all the law there is to it. It's just a plain case of stealing." And again: "That's the case you are trying, that is, that the automobile which was found in the possession of the defendant was the automobile of Edward Hartley, who is the prosecuting witness."

The defendant complains that these were expressions of opinion on the part of the trial Judge, and that they influenced the jury in arriving at its verdict, and violated his constitutional right. We do not think so. The appellant cites several cases which he argues are analogous, notably: *Haynes v. Graham,* 192 S. C., 382, 6 S. E. (2d), 903; *State v. Pruitt,* 187 S. C., 58, 196 S. E., 371; *State v. Johnson,* 85 S.

C., 265, 67 S. E., 453; *Lusk v. State Highway Department,* 181 S. C., 101, 186 S. E., 786. But an examination of these cases reveals a state of facts different from the facts in the case at bar, and they lend no support to the defendant's contention. In common parlance larceny is just plain stealing, and is well understood as such by laymen. The presiding Judge had previously given the legal definition of larceny, and by use of the quoted expression merely elaborated upon it. It would be going far afield to say that he was in any way commenting upon the evidence or intimating his opinion thereon. And the same thing is true with reference to the second quoted statement to which we have referred.

Finally it is said that the Court erred in giving this charge: "Another law says that when a person is found in possession of recently stolen property, he is presumed to be the thief, and the burden of proof is upon him to explain how he got into possession of the stolen property. First, the state must convince the jury that the property in the possession of the defendant was recently stolen. If you are convinced that it was recently stolen property that was in his possession, then, the presumption of law is that he was the thief, and the burden is upon him to show (how) he came into possession of it—to explain his possession."

The alleged error pointed out is that the Court should have charged that the burden of proof is on the state to establish beyond a reasonable doubt that the property which was found in the possession of the defendant, if such were found, was recently stolen; and, further, that the jury should have been instructed that the burden did not shift to the defendant, but it was only incumbent upon him to explain his possession. And, finally, that the jury should have been charged that the State must prove beyond a reasonable doubt that the property found in the possession of the defendant, if such were so found, was the property of the prosecuting

witness, and that this burden remained with the State throughout the trial.

A reading of the entire charge reveals no error. At the commencement of the charge the jury were fully instructed as to the presumed innocence of the defendant and that such presumption of innocence attended him and continued throughout the trial of the case "until the State convinces the jury beyond a reasonable doubt, that he is guilty." The jury was further instructed that unless the State proved that the automobile alleged to have been stolen was the property of Edward Hartley, the defendant could not be convicted under the indictment; and that the State must prove such ownership as an element of the offense.

It is urged especially, however, that the trial Judge erred in that portion of his charge which we have quoted, wherein he said, "If you are convinced that it was recently stolen property that was in his possession, then the presumption of law is that he was the thief, and the burden is upon him to show (how) he came into possession of it—to explain his possession." The appellant objects to the use of the word "burden," in the foregoing quotation.

In this instruction it is quite evident that the word "burden" is used in a sense synonymous with the word "duty," or "obligation," carrying the same meaning, as something "incumbent," or imposed as a duty. For instance, the Court said in *State v. Kinman,* 7 Rich., 497 (quoted with approval in *State v. Garvin,* 48 S. C., 258, 26 S. E., 570, and *State v. Rowe,* 122 S. C., 448, 115 S. E., 586) : "It may be laid down generally that whenever the property of one man, which has been taken from him without his knowledge or consent, is found upon another it is incumbent upon that other to prove how he came by it; otherwise, the presumption is that he obtained it feloniously."

The presumption that the possessor is the thief which arises from the possession of recently stolen goods is a presumption of fact. This presumption is to be

considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the State has carried the burden of satisfying the jury bebond a reasonable doubt of the defendant's guilt. *State v. Campbell,* 131 S. C., 357, 127 S. E., 439. In line with the cases cited, it was incumbent upon the accused to explain his possession. And under all the circumstances of this case we do not believe that the jury was misled, or that the use of the word "burden" resulted in prejudicial error.

All exceptions are overruled.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM and MESSRS. JUSTICES BAKER and STUKES and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.