16010

STATE v. LYLES.
(45 S. E. (2d) 181)

*Messrs. J. Allen Lambright* and *Thomas W. Whiteside,* of Spartanburg, for Appellant.

*Mr. Samuel R. Watt,* Solicitor, of Spartanburg, for Respondent.

November 12, 1947.

FISHBURNE, J.: The appellant, Tommy Lyles, was tried upon an indictment charging three counts: (1) Breaking and entering a railway car in the nighttime, with intent to commit the crime of larceny; (2) grand larceny; (3) buying or receiving stolen goods of a value in excess of $20.00. He was acquitted on the third count. The jury returned a general verdict of guilty on the first and second counts, and he was sentenced to imprisonment for a period of five years.

The appellant made no motion for the direction of a verdict upon the conclusion of the evidence, but after the verdict of the jury was published he moved for a new trial upon the ground that there was no evidence sufficient to support a conviction of the crime of breaking and entering, or of grand larceny as charged. The motion was overruled by the trial judge, whereupon appeal was taken to this court.

If the appellant had desired to have the questions raised by his exceptions reviewed here, he should have made his motion for a directed verdict upon the close of the evidence, as required by Rule 76 of the circuit court. *State v. O'Shields,* 163 S. C. 408, 161 S. E. 692; *State v. Ray,* 147 S. C. 329, 145 S. E. 192. In view of the fact, however, that the conviction and sentence involve the liberty of the appellant, this court will waive his failure to comply with the rule, and will consider the question on its merits. *State v. Stevens,* 116 S. C. 210, 107 S. E. 906.

Some time prior to August 14, 1946, the Southern Railway Company purchased 7,800 yards of grey unbleached sheeting from a wholesale house in Boston at forty-seven cents per yard, which was shipped to it by rail at Spartanburg, South Carolina, in boxes or cases. Each case contained about 500 yards and weighed approximately 340 pounds. The cloth was received on August 14th and placed in a storage car in what is called the Hayne Railroad Yard of the Southern Railway Company near Spartanburg. The evidence shows that the Hayne Yard was surrounded by a high fence and guards were stationed in and around it at nighttime. In order for anyone to enter this storage yard in the daytime he would have to obtain a pass or special permission.

On September 26, 1946, when an inventory was made, it was discovered that 3,991 yards of the sheeting had been stolen from the storage car. The theft was promptly reported to the police officers and the inspectors of the railroad company, and the sheriff's office of the county of Spartanburg. They immediately began an investigation, which resulted in

the arrest of Tommy Lyles, the appellant, about two weeks thereafter.

Upon trial of the case, the state's witness, L. H. Brock, testified that he conducted a dry goods store at Gaffney, and that about the end of August, 1946, the defendant visited his store and offered to sell him some unbleached sheeting, which was a very scarce article on the market at that time. He bought from Lyles 1,000 yards, or two cases, at forty cents per yard, and paid him therefor $400.00 in cash. Later, when interviewed by the officers, Brock readily turned over to them five rolls of the cloth for delivery to the railroad company, which he had not disposed of.

R. B. Byers, a witness for the state, testified that he operated a small business in Gaffney, making chenille bedspreads; that on September 17, 1946, he bought twelve rolls of unbleached sheeting from appellant at forty-three cents per yard, and paid him therefor by check in the sum of $317.56. This purchase was made at the filling station of Joe Haynes in the city of Spartanburg, which appellant used as headquarters in his trucking business (appellant seems to have also dealt in used cars).

G. N. Morgan, another witness for the state, likewise operated a business in Gaffney making chenille bedspreads. He stated that some time during August or September, 1946, he purchased two rolls of unbleached sheeting from appellant at forty cents per yard, in the city of Spartanburg, at the Joe Haynes filling station; and that at the time of the sale appellant had this cloth in the trunk of his automobile.

When the appellant was interrogated by the officers with reference to these sales, he denied all knowledge of them and denied that he knew either Byers or Morgan. However, when he was confronted with the check which Byers had given him, which he had endorsed and collected, he then admitted making the sales in question.

The evidence for the state tends to show a confused and misleading explanation from appellant, as to where he got

the cloth, and from whom he had purchased it. He first told the officers that he bought it from a person he did not know, but who had it in a Chevrolet car parked near Joe Haynes' filling station. After this supposed clue had been investigated, he then told the officers that he had bought it from an unknown party who lived at Spindale, North Carolina. He voluntarily went with the officers to Spindale in the effort to locate and identify this person, but no such person could be found. Afterwards, appellant told the officers that he had taken them on a "wild goose chase"; that he was not going to give away the man he got the cloth from; and that he would take the "rap" himself before he would "squawk".

In his testimony, appellant denied breaking or entering the railroad car, and denied that he had committed any theft of the cloth. He stated that he bought the cloth in August or September, 1946, in Spartanburg, from a nice looking, well-dressed stranger, who was driving a two-door Chevrolet coach; and that he had never seen this man before, and had never seen him since. He said that he paid thirty-five cents per yard for it and placed it in a public place in the filling station of Joe Haynes, where anyone could see it. Appellant said on cross examination that he was familiar with the Hayne Shop Yard of the Southern Railway Company; that he had friends up there, but had not been there in three years. He admitted that he had been convicted when he was sixteen years old for receiving some babbitt metal which he knew had been stolen from railroad cars in the Hayne Shop Yard.

The testimony for the state leaves no doubt that the sheeting sold by appellant was the identical cloth stolen from the railroad yards of the Southern Railway Company. In fact, no contention to the contrary was made by appellant.

> Upon a careful consideration of the record, we find no testimony or reasonable inferences therefrom sufficient to go to the jury upon the first count charged

in the indictment—that is, breaking and entering a railway car in the nighttime with the intent to commit the crime of larceny; and conviction on this count must be set aside.

In our opinion, the trial court committed no error in submitting to the jury the charge of grand larceny; and conviction upon this ground is upheld.

The admissibility of circumstantial evidence to prove the *corpus delicti* is not questioned, but appellant contends that no evidence was offered by the state connecting him with the crime of grand larceny other than the fact of his possession of the stolen property, which standing alone was not sufficent upon which to base a conviction.

We said in *State v. Roof,* 196 S. C. 204, 12 S. E. (2d) 705, 708: .

"The presumption that the possessor is the thief which arises from the possession of recently stolen goods is a presumption of fact. This presumption is to be considered by the jury merely as an evidential fact, along with the other evidence in the case, in determining whether the state has carried the burden of satisfying the jury beyond a reasonable doubt of the defendant's guilt. *State v. Campbell,* 131 S. C. 357, 127 S. E. 439. In line with the cases cited, it was incumbent upon the accused to explain his possession. * * *"

And see on the same point *State v. Baker,* 208 S. C. 195, 37 S. E. (2d) 525.

The appellant argues, however, that the presumption of guilt which arises from the possession of stolen goods becomes too tenuous to be of any value when the time between the theft and the possession amounts to four weeks or more, as shown in this case.

An examination of the cases which state the rule in regard to the effect of possession of stolen property will show that the property must have been recently stolen. What is

meant, however, by "recent" is incapable of exact or precise definition, and the term is said to vary "within a certain range with the conditions of each particular case". Wharton's Crim. Ev., Sec. 759. There are cases, no doubt, so clear in nature and undisputed in facts, as that the court could pronounce a possession recent or not recent as a matter of law; but the question is usually one of fact for the determination of the jury. As was said in *People v. Malin*, 372 Ill. 422, 24 N. E. (2d) 349, 352:

"Recency of possession is ordinarily a question of fact for the jury, or for the trial court when a jury trial has been waived, although in extreme cases it may become a matter of law. In determining this question, time is an important element to be considered, but is not the only one. The circumstances and character of the goods, their salability, whether they are cumbersome or easily portable are also among the factors to be considered. No definite time can be fixed as to when, as a matter of law, possession is or is not recent."

And see *Wilborne v. Commonwealth*, 182 Va. 63, 28 S. E. (2d) 1; 32 Am. Jur., Sec. 142, pages 1054, 1055; Annotation, 101 Am. St. Rep. pages 481, 510.

The evidence in this case shows that the intervening period between the theft and the possession by appellant of the stolen goods was approximately four weeks, and while time is an important element to be considered, there are also other factors. The evidence for the state shows the cumbersome character of the cases of cloth stolen—each case weighing approximately 340 pounds. It is inferable that these bulky boxes were not easily portable; and the testimony would indicate that the sales made by the possessor of the stolen goods were surreptitious and effected at points distant from the City of Spartanburg, where appellant seems to have had his habitation. So that under the facts as shown here, we have no hesitation in holding that the recency of possession was a question of fact for the jury.

The possession by the accused of the stolen property cast upon him the duty of producing evidence to explain in what manner he acquired the goods, and the absence of such evidence justified the inference that he was the perpetrator of the crime. It was incumbent upon appellant to explain his possession. The explanation he offered is identical with, and as unsatisfactory and vulnerable as that offered by the defendant in *State v. Roof,* 196 S. C. 204, 12 S. E. (2d) 705, 706, where the defendant was charged with stealing an automobile. His explanation was that he had purchased the automobile from two strangers; that he had never seen them before nor had he seen them since. We were led in that case to quote from *Thomason v. State,* Tex. Cr. App., 41 S. W. 638: "This is the same ubiquitous stranger who so often figures in the records of this court in theft of cattle cases. Like the Wandering Jew, he is always on the go, but, when the time of trial comes, is always inaccessible, and cannot be found".

In our opinion, the presumption of guilt which arose from the possession of the stolen goods, with no credible explanation, along with the other evidence in the case, was sufficient for the jury to render a verdict of guilty on the charge of grand larceny. Nor can we say as a matter of law under the circumstances of this case that the possession of the stolen goods four weeks after the commission of the crime was too remote.

As hereinabove stated, the jury returned a general verdict of guilty on two counts, that is: (1) Breaking and entering in the nighttime; and (2) grand larceny. However, we have found no evidence in the record to warrant the submission of the first count to the jury, and this count must be dismissed. It would appear that the sentence of five years meted out by the court covered both counts. This case, will, therefore, be remanded to the circuit court in order that the appellant may be resentenced on the second count alone, that is, upon the verdict of guilty of grand larceny.

Judgment affirmed and case remanded.

BAKER, CJ., and STUKES, TAYLOR and OXNER, JJ., concur.