# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Respondent,

v.

Robin Renee Herndon, Petitioner.

Appellate Case No. 2019-000467

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Aiken County
DeAndrea G. Benjamin, Circuit Court Judge

---

Opinion No. 27986
Heard February 12, 2020 – Filed July 1, 2020

---

## REVERSED AND REMANDED

---

Appellate Defender David Alexander, of Columbia, for
Petitioner.

Attorney General Alan Wilson and Assistant Attorney
General William F. Schumacher IV, both of Columbia;
and Eleventh Circuit Solicitor Samuel R. Hubbard III, of
Lexington, for Respondent.

---

**JUSTICE KITTREDGE:** In 2013, this Court held that in a criminal prosecution
that includes circumstantial evidence:

[T]rial courts should provide the following language as a circumstantial evidence charge, in addition to a proper reasonable doubt instruction, when so requested by a defendant:

> There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence. Direct evidence directly proves the existence of a fact and does not require deduction. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact.
>
> Crimes may be proven by circumstantial evidence. The law makes no distinction between the weight or value to be given to either direct or circumstantial evidence, however, to the extent the State relies on circumstantial evidence, . . . the circumstances must be consistent with each other, and when taken together, point conclusively to the guilt of the accused beyond a reasonable doubt.[1] If these circumstances merely portray the defendant's behavior as suspicious, the proof has failed.
>
> The State has the burden of proving the defendant guilty beyond a reasonable doubt. This burden rests with the State regardless of whether the State relies on direct evidence, circumstantial evidence, or some combination of the two.

*State v. Logan*, 405 S.C. 83, 99, 747 S.E.2d 444, 452 (2013).

---

[1] Originally, this sentence stated that "*all of* the circumstances must be consistent with each other," but we hereby modify the *Logan* charge by deleting the two italicized words. We make this change because we are concerned the phrase "all of the circumstances" could be construed to invade the fact-finding role of the jury. It should be left to the jury—aided by arguments of the lawyers—to determine whether a conflict between circumstances is sufficiently significant to give rise to reasonable doubt.

Following the *Logan* decision, Petitioner Robin Herndon, who was then a law enforcement officer, shot and killed her live-in boyfriend, Christopher Rowley (the victim), allegedly in self-defense.  Petitioner was tried for murder; the case against Petitioner was largely circumstantial.  Petitioner requested the *Logan* circumstantial evidence charge, but the trial court refused, opting instead for the pre-*Logan* circumstantial evidence charge.

Petitioner was convicted of voluntary manslaughter.  On appeal, there has been no contention that the trial court properly refused to give the *Logan* charge.  Instead, the State contends the erroneous failure to give the *Logan* charge was harmless, for the jury instructions as a whole were substantially correct.  The court of appeals summarily accepted the State's argument and affirmed.  *State v. Herndon*, Op. No. 2018-UP-458 (S.C. Ct. App. filed Dec. 12, 2018).  We granted Petitioner's petition for a writ of certiorari to review the court of appeals' decision. We now reverse and remand for a new trial.

## I.

The victim was prone to severe mood swings, aggression, and uncontrolled anger, and he admitted to his physician that he physically abused Petitioner.[2]  He was diagnosed with bipolar disorder and placed on medication.

On the day of the incident, the victim was not taking his medication and was behaving in an aggressive manner, which led to an argument between Petitioner and the victim.  Several neighbors witnessed the beginning of the argument, when the victim confronted Petitioner in their front yard.  The argument moved inside the residence out of view of the neighbors.  According to Petitioner, after they retreated into the residence, the victim repeatedly punched her, and she drew her service weapon and warned the victim to leave.  Petitioner testified the victim then charged at her, swatting at the gun.  The gun discharged,[3] striking and killing the

---

[2] The record contains compelling evidence of the victim's physical abuse of Petitioner aside from his own admission.  As a law enforcement officer, Petitioner worked in the domestic violence unit, dealing extensively with battered women.  According to her testimony at trial, her work history caused her to become deeply ashamed when she became a domestic violence victim herself.  As a result, despite the contemporaneous physical evidence of abuse that was apparent to others, Petitioner refused to confirm she was in an abusive relationship until after the victim's death.

[3] Petitioner's theory of the case was that she acted in self-defense, or, in the

victim.

An autopsy of the victim did not definitively determine how the fatal injury occurred.  The pathologist concluded the trajectory of the bullet was equally consistent with at least two scenarios:  (1) Petitioner shooting the victim as he walked up the steps of the house, or (2) the victim charging toward Petitioner when he was shot.  The State elected to charge Petitioner with murder based on the first possible scenario.

At trial, the State theorized Petitioner had fabricated the victim's chronic physical abuse toward her, placing emphasis on Petitioner's failure to report the abuse prior to the shooting and her habit of hiding any contemporaneous injuries.  As a result, the State argued Petitioner was not entitled to an acquittal.  Nevertheless, the trial court charged the jury on both self-defense and accident.

As noted, because the State's case was circumstantial, Petitioner specifically requested the charge set forth in *Logan*.  The trial court denied the request, stating "I'll go with the charge that's in the desk book.  It seems very similar, so I will not charge [the *Logan* charge]."  After the jury returned its verdict, the trial court sentenced Petitioner to nineteen years' imprisonment for manslaughter.[4]

## II.

When requested, the *Logan* charge must be given in cases based in whole or part on circumstantial evidence.  *See Logan*, 405 S.C. at 99, 747 S.E.2d at 452. Notwithstanding the mandatory language in *Logan*, erroneous jury instructions remain subject to an appellate court's authority to "consider[] the trial court's jury charge as a whole and in light of the evidence and issues presented at trial." *Id.* at 90, 747 S.E.2d at 448.  "To warrant reversal, a trial [court's] refusal to give a requested jury charge must be both erroneous and prejudicial . . . ."  *State v. Brandt*, 393 S.C. 526, 550, 713 S.E.2d 591, 603 (2011) (citation omitted). "However, if the trial [court] refuses to give a specific charge, there is no error if

---

alternative, the gun fired by accident after the victim hit it.

[4] It is significant to note that—despite the State denigrating Petitioner's claims of physical abuse at the hands of the victim—the trial court found by a preponderance of the evidence that Petitioner was eligible for early parole based on the fact she was a victim of domestic violence.  *See* S.C. Code Ann. § 16-25-90 (2015) (stating a victim of domestic violence convicted of an offense against a household member is eligible for parole after serving one-fourth of his or her prison term).

the charge actually given sufficiently covers the substance of the request." *State v. Mattison*, 388 S.C. 469, 479, 697 S.E.2d 578, 583 (2010) (citation omitted).

## III.

We agree with Petitioner that the "charge as a whole" approach cannot rescue this conviction. Over the years, the circumstantial evidence charge in South Carolina has evolved significantly. *See Logan*, 405 S.C. at 95–97, 747 S.E.2d at 450–51 (setting forth the full history of the evolution). In relevant part, it was initially required that circumstantial evidence point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis. *See, e.g.*, *State v. Kimbrell*, 191 S.C. 238, 242, 4 S.E.2d 121, 122 (1939) (citing *State v. Langford*, 74 S.C. 460, 55 S.E. 120 (1906); *State v. Hudson*, 66 S.C. 394, 44 S.E. 968 (1903); *State v. Aughtry*, 49 S.C. 285, 26 S.E. 619 (1897)). Subsequently, in response to guidance from the Supreme Court of the United States,[5] the Court removed this requirement, instead ordering trial courts to instruct juries that circumstantial evidence must be given the same weight and treatment as direct evidence (the *Grippon* charge). *See State v. Grippon*, 327 S.C. 79, 83–84, 489 S.E.2d 462, 464 (1997); *see also State v. Cherry*, 361 S.C. 588, 601, 606 S.E.2d 475, 482 (2004) (holding the *Grippon* charge was to be the "sole and exclusive" one to be given in circumstantial evidence cases from that time forward).

However, in *Logan*, the Court posited that there are different approaches used to analyze direct and circumstantial evidence. *Logan*, 405 S.C. at 97, 747 S.E.2d at 451. The Court reasoned that "evaluation of circumstantial evidence requires jurors to find that the proponent of the evidence has connected collateral facts in order to prove the proposition propounded—a process not required when evaluating direct evidence." *Id.* The Court found that "defendants should not be restricted from requesting a jury charge that reflects the requisite connection of collateral facts necessary for a conviction." *Id.* at 99, 747 S.E.2d at 452. Therefore, we held the trial court "should" give the specific charge provided in the *Logan* decision, quoted in the introduction of this opinion, when requested. *See id.* (explaining the Court's "holding does not prevent the trial court from issuing the [*Grippon* charge]. *However, trial courts may not exclusively rely on that charge*

---

[5] *See Holland v. United States*, 348 U.S. 121, 139–40 (1954) (holding if a proper reasonable doubt instruction is given, a jury need not be instructed that circumstantial evidence must be so strong as to exclude every reasonable hypothesis other than guilt).

*over a defendant's objection*." (emphasis added)).

We acknowledge there may be a case in which a trial court's failure to give the *Logan* charge might be harmless error, but this is not such a case. The State's case against Petitioner was almost exclusively circumstantial. The State relied on (1) eyewitness testimony prior to the shooting to suggest Petitioner was angry, and (2) testimony from the pathologist explaining the pathway of the bullet *could* have been caused by Petitioner shooting the victim as he walked up the stairs to the house. In urging this Court to find the error was harmless, the State entirely disregards the testimony of its own witness that it was plausible the fatal wound could have been caused by the victim charging Petitioner, exactly as Petitioner testified.[6]

The competing inferences involved in this circumstantial evidence case illustrate well the need for the *Logan* charge. Because the failure to provide the *Logan* circumstantial evidence charge was not harmless and that failure manifestly prejudiced Petitioner, we reverse and remand for a new trial.

**REVERSED AND REMANDED.**

**BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.**

---

[6] As an appellate court, we must be careful not to weigh the evidence. In assessing the State's harmless error argument, we recognize that what we refer to as plausible conflicting evidence may not be viewed as such by the jury. Fundamental to a jury's role as fact-finder is making credibility determinations, which lie in the sole province of the jury. Our discussion here is for the limited purpose of explaining why the failure to give the *Logan* charge cannot be considered harmless.